## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DANIELLE KAMINSKI, | ) | |
| | ) | CASE NO. 1:15 CV 1103 |
| Plaintiff, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| COMMISSIONER OF SOCIAL | ) | AND ORDER |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court upon the Report and Recommendation of Magistrate

Judge Nancy A. Vecchiarelli.  The Report and Recommendation (Doc #16), issued on February

26, 2016, is hereby ADOPTED by this Court.

### Procedural and Factual Background

#### I. Personal, Educational, and Vocational Evidence

Plaintiff was 29-years-old at the time of the administrative hearing, and lived with her

mother and two-year-old daughter.  (*Id.*).  She attended high school through 12th grade, but did

not graduate or obtain a GED.  (*Id.*).  She last worked as a nanny in 2009.  (*Id.*).

#### II. Medical Evidence

On December 27, 2011, Plaintiff met with Lisa H. Kurtz, M.D., of Northern Neurology,

Inc.  (*Id.* at 3).  She reported horrible migraines that would last for a few days and force her to

remain in bed.  (*Id.*).  Dr. Kurtz then prescribed Topamax.  (*Id.*).  On February 28, 2012, Plaintiff

went to Southwest General Health Center where she complained of migraines once per day and abdominal pain twice per day. (*Id*.). Plaintiff was seen again at Southwest General on April 18, 2012. (*Id*.). She was discharged on the same day when her condition improved with medication and she was given instructions to follow-up with a physician. (*Id*.).

On April 30, 2012, Dr. Kurtz completed a questionnaire regarding Plaintiff's medical condition. (*Id*.). Dr. Kurtz reported seeing Plaintiff once and diagnosed her with migraines, upper back and neck pain, paresthesias, scoliosis, anxiety and depression. (*Id*.). She reported that there were no focal findings upon neurological examination, and that there was no further consultative/diagnostic testing available. (*Id*.). Dr. Kurtz recommended Plaintiff to undergo an MRI on her brain and cervical spine, but Plaintiff did not complete the recommended testing. (*Id*.). Plaintiff was prescribed medication along with Topamax, but she did not follow up with Dr. Kurtz on the effectiveness of the medication. (*Id*. at 4).

On August 25, 2012, Charles F. Misja, Ph.D., saw Plaintiff and completed a psychological evaluation. (*Id*.). Plaintiff reported having migraines about twice a week that left her bedridden. (*Id*.). Dr. Misja diagnosed Plaintiff with an adjustment disorder and indicated that Plaintiff had reported pain due to migraines and endometriosis. (*Id*.). Plaintiff's functional abilities were assessed by Dr. Misja: Plaintiff should be able to function adequately despite her reported problems with maintaining a job due to her health and she should be able to understand and implement ordinary instructions. (*Id*.). Dr. Misja's assessment also concluded that Plaintiff had mild limitations in her ability to respond appropriately to pressure in a work-related setting, in maintaining attention and concentration, in persistence and pace to perform simple and multi-

2

steps tasks, and in responding appropriately to supervision and coworkers in a work setting. (*Id.*).

In October of 2012, state agency physician Steve E. McKee, M.D., completed a physical residual functional capacity ("RFC") assessment. (*Id.*). Dr. McKee concluded that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; could stand and/or walk for six hours in an eight-hour workday; could sit for six hours in an eight-hour workday; could push and pull without limitation except as shown for lifting and carrying; could frequently climb ladders, ropes, scaffolds ramps and stairs; and could balance, stoop, kneel, crouch and crawl without limit. (*Id.*).

On March 26, 2013, Plaintiff saw Stephanie Towers, PA, at the Ridgepark Family Practice, Inc. (*Id.* at 5). Plaintiff complained of intermittent hip pain at night and reported a history of migraines since she was a teenager. (*Id.*). She complained of weekly migraines that were so debilitating that they forced her to stay in bed for up to three days. (*Id.*). Plaintiff was recommended to have imaging studies performed, but could not afford them. (*Id.*). She also indicated that she had tried Zomig, Topmax, Maxalt, and Imitrex with no relief. (*Id.*). There were no localized findings upon neurological examination. (*Id.*). Ms. Towers prescribed Inderal and advised Plaintiff to follow up with a neurologist. (*Id.*). On May 28, 2013, Plaintiff revisited Ms. Towers complaining of migraines and anxiety. (*Id.*). She had not followed up with a neurologist and did not have imaging tests completed. (*Id.*). She requested a new order for imaging, and Ms. Towers advised Plaintiff to take the medication prescribed by Diane Kushnar, D.O., who also worked at the Ridgepark Family Practice. (*Id.*).

Plaintiff met with Ms. Towers again in August of 2013 with complaints of sinus congestion and headaches. (*Id.*). In September of 2013, Plaintiff met with Dr. Kushnar reporting

that she had 18 migraines within the past month. (*Id.*). She reported that she was having a horrible migraine that day, which caused her to vomit for most of the day. (*Id.*). She indicated that she wanted to have an MRI, but she could not afford one since it was not covered by insurance. (*Id.*). She also indicated that stress and anxiety were causing more headaches. (*Id.*). A doctor recommended that Plaintiff try Vyvanse to combat her anxiety. (*Id.* at 5-6). Dr. Kushnar recommended that Plaintiff continue seeing this specialist and follow up with her in one month. (*Id.* at 6). Plaintiff followed up with Dr. Kushnar on October 8, 2013, and indicated that that Vyvanse was working well. (*Id.*). However, Plaintiff believed her dosage should be increased. (*Id.*). Despite complaints of excessive sweating, she reported that she was able to focus better and felt more productive and energetic. (*Id.*). She also reported that she could function well into the evening. (*Id.*). Dr. Kushnar agreed to increase the dosage with instructions to follow up with her again. (*Id.*).

### III. Plaintiff's Testimonial and Function Report Evidence

Plaintiff testified and was represented at a hearing on January 13, 2014. (*Id.*). She indicated that she had stopped working as a nanny because of migraines and endometriosis. (*Id.*). She described her migraines as excruciating, and stated that a typical migraine would last at least 24 hours, but could last for several days. (*Id.*). She is unaware of any specific triggers, but indicated that there are times when she is able to tell when a migraine will occur. (*Id.*). Plaintiff testified that she has around 15 to 18 migraines a month. (*Id.* at 6-7). Doctors have prescribed various medications, but Plaintiff testified that none of these options were effective. (*Id.*). Plaintiff testified that some of her migraines have been so debilitating that her mother is forced to take care of her daughter. (*Id.*).

4

On April 23, 2012, Plaintiff completed an Adult Function Report ("Function Report"). (*Id.*). The Function Report indicated that she had a history of migraines starting when she was ten-years-old, and that she experienced migraines at least 15 to 18 days a month. (*Id.*). She reported that her pain is unbearable. (*Id.*). She also indicated that she has tried everything to combat migraines with no success. (*Id.*). While Plaintiff takes care of her baby's daily needs, other family members help when migraines prevent her from doing so. (*Id.*). Plaintiff has problems falling and staying asleep, but she has no problems with her personal needs. (*Id.*). She is able to prepare simple meals at least twice a day, but does not have the energy or is in too much pain to cook full meals. (*Id.*). Household chores are completed slowly and a little at a time. (*Id.*). Plaintiff goes out every few days and shops once a month. (*Id.*). She indicated that her migraines affect her ability to lift, squat, bend, reach, walk, kneel, remember, complete tasks, concentrate and follow instructions. (*Id.* at 9). She also indicated that she is unable to walk more than 50 feet without stopping, and has a hard time remembering things. (*Id.*). She did report that her ability to handle stress was "fair" and her ability to handle change was "good." (*Id.*).

### IV. Vocational Expert's Testimony

Vocational Expert Gene Burkhammer ("VE") testified at the hearing. (*Id.*). The VE made a finding that Plaintiff had no past relevant work because her work experience did not rise to the level of substantial gainful activity. (*Id.*). The ALJ asked the VE to assume a 29-year-old individual with a limited 11th grade education and no relevant vocational training for the hypothetical question. (*Id.*). This hypothetical individual was limited to light work, meaning that the individual could sit, stand, or walk for six hours during an eight-hour workday and could lift carry, push or pull ten pounds frequently and 20 pounds occasionally with breaks. (*Id.*). This

5

hypothetical individual was also limited to low stress tasks, such as tasks not in a fast paced

production environment or tasks that require arbitration, negotiation, confrontation, directing the

work of others, or being responsible for the safety of others.  (*Id.* at 10).  The VE determined that

this individual could have a light level job, such as a housekeeping cleaner, a sales attendant, or a

mail clerk.  (*Id.*).  The VE also determined that there would be no jobs available that would

permit being absent from work two or more days per month.  (*Id.*).

On June 2, 2015, Plaintiff filed a timely Complaint with this Court pursuant to 42 U.S.C.

§ 405(g) seeking review of the Appeal Council's decision.  (Doc #1).  The Magistrate Judge

issued her Report and Recommendation on May 2, 2016.  (Doc #16).  She concluded that the

ALJ's determination that Plaintiff was not disabled and, therefore, not entitled to SSI was

credible and supported by substantial evidence.  Accordingly, the Magistrate Judge

recommended that the Court affirm the ALJ's determination.  Plaintiff timely filed objections to

the Magistrate Judge's Report and Recommendation.  (Doc #17).  Defendant then filed a

response.  (Doc #18).  This Court herein reviews the Report and Recommendation, Plaintiff's

Objections, and Defendant's Response.

### Standard of Review for a Magistrate Judge's Report and Recommendation

The applicable district court standard of review for a magistrate judge's report and

recommendation depends on whether objections were made to that report.  When objections are

made to a report and recommendation of a magistrate judge, the district court reviews the case de

novo.  FED. R. CIV. P. 72(b) provides this standard of review.  It states, in pertinent part, the

following:

6

> The district judge to whom the case is assigned shall make a de
>
> novo determination upon the record, or after additional evidence,
>
> of any portion of the magistrate judge's disposition to which
>
> specific written objection has been made in accordance with this
>
> rule.  The district judge may accept, reject, or modify the
>
> recommended decision, receive further evidence, or recommit the
>
> matter to the magistrate judge with instructions.

Accordingly, this Court will review the Report and Recommendation, to which timely objections have been filed, de novo. (*See Ivy v. Secretary of Health and Human Servs.*, 976 F.2d 288, 289-90 (6th Cir. 1992)).

It is important to note that the standard of review for a magistrate judge's report and recommendation is distinct from the standard of review for the Commissioner of Social Security's decision regarding benefits.  Judicial review of the Commissioner's decision, as reflected in the decisions of the ALJ and the Appeals Council, is limited to whether that decision is supported by substantial evidence. (*See Smith v. Secretary of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989)).  "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." (*Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citation omitted)).

## Conclusion

This Court has reviewed the Report and Recommendation of this case *de novo* and has considered all of the pleadings, transcripts, affidavits, motions, and filings of the parties.  Further, this Court has reviewed the ALJ's findings in Plaintiff's administrative proceedings and the Appeals Councils decision under the substantial evidence standard.  After careful evaluation of the record, the Report and Recommendation, Plaintiff's Objections, and Defendant's Response, this Court adopts the findings of fact and conclusions of law of the Magistrate Judge as its own.

Plaintiff asserts an objection to the Magistrate Judge's conclusion that the ALJ sufficiently explained his credibility analysis in the Report and Recommendation and that it is supported by substantial evidence.  (Doc #17 at 1).  Plaintiff asserts that "the ALJ's credibility analysis is not reasonable given the ALJ's finding that Plaintiff suffers from severe migraines" and that "the ALJ's residual functional capacity assessment does not account for any off-task behavior or absence from work due to migraine headaches." (*Id.*).  Specifically, Plaintiff asserts that the ALJ did not come to a reasonable conclusion after evaluating factors regarding Plaintiff's ability to perform daily activities and her response to medication. (*Id.* at 2).  Plaintiff asks this Court to reject the Report and Recommendation of the Magistrate Judge, reverse the decision of the Commissioner, and award Plaintiff the benefits to which she is entitled. (*Id.* at 3).

The Magistrate Judge did not err in finding that the Commissioner's analysis of Plaintiff's migraines was credible and supported by substantial evidence.  The Commissioner's conclusions must be affirmed absent a determination that the Commissioner failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. (*Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003)).  The Commissioner's finding

8

"as to any fact if supported by substantial evidence shall be conclusive." (*McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g))).  Further, the Commissioner's decision cannot be overturned even if the claimant's position is supported "so long as substantial evidence supports the conclusion reached by the ALJ." (*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)).

Given that an ALJ's credibility assessment is to be accorded great weight and deference, the Court finds that the ALJ's credibility analysis is sufficiently explained and is supported by substantial evidence.  The ALJ's determination that Plaintiff's migraine allegations were not entirely credible was supported by substantial evidence.  The ALJ considered the opinions of Dr. Misja and Dr. McKee, and Plaintiff does not contend that these medical opinions do not support the ALJ's decision or that the ALJ's decision is not supported by these opinions.  Further, the ALJ considered Plaintiff's daily capabilities and her testimony regarding the debilitating effects of her migraines, such as having family members provide for her daughter.  Plaintiff has not shown that the ALJ ignored any evidence or that the ALJ excluded any of Plaintiff's testimony when assessing the credibility of her allegations.  The ALJ also considered Plaintiff's testimony regarding medication, such as Plaintiff's testimony that indicated a positive response to medication that improved her ability to manage her daily activities.  While Plaintiff contends that the ALJ erred in assessing this positive response because she was suffering from migraines at the time, the ALJ properly followed regulations.  (*See* 20 C.F.R. § 404.1259(c)(3)(iv)).  Plaintiff has not shown that the ALJ ignored evidence or failed to explain his credibility assessment.  Further, she has not identified medical evidence to support limitations beyond those contained in the RFC.  Therefore, the Court finds that the Magistrate's Report and Recommendation supports the

Commissioner's analysis and that Plaintiff's Objections raise no arguments (factual or legal) that have not been fully addressed.

For the foregoing reasons, the Report and Recommendation of Magistrate Judge Kathleen B. Burke (Doc #16) is hereby ADOPTED.

Consistent with this ruling, Defendant's final decision is AFFIRMED and judgment is entered in favor of Defendant.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: August 1, 2016

10